UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEPHEN ROY WALKER,<br><br>                Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                Respondent. | Crim. Case No. 1:15-cr-00219-BLW-1<br>Civ. Case No. 1:17-cv-00462-BLW<br><br>**ORDER** |

## INTRODUCTION

Pending before the Court is Petitioner Stephen Roy Walker's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Civ. Dkt. 1. The motion is fully briefed and at issue. For the reasons that follow, the Court will deny the motion and dismiss the action without a hearing. The Court will not issue a certificate of appealability.

## BACKGROUND

On February 19, 2014, Magistrate Judge Candy W. Dale approved a warrant allowing law enforcement officials to search the hotel room and personal vehicle of Petitioner Stephen Roy Walker. Civ. Dkt. 8-7 at 1. The Application for Search Warrant was based upon the affidavit of Special Agent Daren Boyd. *Id.* at 2. In his affidavit, Special Agent Boyd described how Mr. Walker had used a photo-sharing website to trade

in images of minors engaged in sexually explicit conduct. *Id.* at 10-14. In performing the investigation Special Agent Boyd obtained subscriber information and Internet Protocol (IP) address records for Mr. Walker from the Yahoo! Inc. Custodian of Records. *Id.* at 15-16. This information uncovered further emails from Mr. Walker to a Craigslist account user. *Id.* at 19-27. In these emails, Mr. Walker offered to introduce his young child to the Craigslist user and sent sexually suggestive images of the child. *Id.* Special Agent Boyd eventually linked Mr. Walker's IP addresses to the hotel room where he was staying in Twin Falls, Idaho. *Id.* at 34-35.

Special Agent Boyd served the search warrant on February 20, 2014, and Mr. Walker then agreed to travel with him to the Twin Falls Police Department for an interview. Civ. Dkt. 8-2 at 2. At the police station, Mr. Walker requested an attorney. *Id.* at 3. Special Agent Boyd asked if he should contact a public defender to which Mr. Walker replied, "Yes, I think the sooner the better." *Id.* at 3-4. Mr. Walker then said he had a business card for an attorney in his wallet, which was still at his hotel room, but that he did not have the funds to pay for an attorney. *Id.* at 4. Special Agent Boyd contacted the Federal Public Defender's Office, who connected him with attorney Andrew Parnes. *Id.* at 5-6. Mr. Walker asked how the attorney would be paid, and Special Agent Boyd explained that the government would pay Mr. Parnes if Mr. Walker was unable to do so. *Id.* at 6.

Pursuant to the search warrant, federal agents discovered numerous images and videos of child pornography from Mr. Walker's external hard drive in his hotel room. Civ. Dkt. 8-2 at 7, ¶ 17. In total, agents recovered 540 digital images and 46 videos

depicting child pornography. Crim. Dkt. 27 at 4. These files included images and videos depicting one of Mr. Walker's children engaged in sexually explicit conduct. *Id.* at 8-9, ¶ 21. Several of the video and image files depicted Mr. Walker sexually assaulting the child. *Id.* After arriving at the station, Mr. Parnes spoke with Special Agent Boyd and was given a copy of the search warrant and supporting affidavit. Civ. Dkt. 8-1 at 1, ¶ 6. Upon review, Mr. Parnes concluded that there was no basis to challenge the search warrant. *Id.* at ¶ 8. At that time, Mr. Parnes also reviewed the pornographic material that had been seized. *Id.* at 2, ¶ 11.

Mr. Parnes and Mr. Walker then discussed the possibility of cooperation with law enforcement. Civ. Dkt. 8-1 at 2, ¶ 10. Mr. Parnes counseled Mr. Walker that should he decide to cooperate, he would need to tell the whole truth. *Id.* Mr. Parnes further advised Mr. Walker that he might receive significant benefits under the sentencing guidelines for his cooperation. *Id.* To facilitate cooperation, a Government attorney emailed a proffer agreement letter to Mr. Parnes, which he reviewed with Mr. Walker. *Id.* at ¶ 9. The proffer agreement stated, in pertinent part:

> No Direct Use: The United States agrees that information contained in your client's proffer may not be used in the government's case-in-chief against your client, in the event he decides to go to trial in the matter now pending…
> Sentencing Information: Your client understands that since he is likely to be indicted, or charged by information if he eventually decides to waive the right to indictment, the United States, pursuant to 18 U.S.C. § 3661, must provide to your client's sentencing judge the contents of the proffer. Pursuant to USSG § 1B1.8, however, the proffer may not be used to determine the appropriate guideline sentence[.]

Civ. Dkt. 8-5 at 2. Mr. Walker agreed to cooperate with the government agents under the terms of the proffer letter. Civ. Dkt. 8-1 at 2, ¶ 13. Information from the proffer interviews would eventually be included in Mr. Walker's Presentence Investigation Report (PSR). Crim. Dkt. 36 at 25-26, ¶ 25-33.

After signing the proffer agreement, Mr. Walker provided a statement to government agents at the police station with Mr. Parnes present. Civ. Dkt. 8-1 at 2, ¶ 13. During the conversation, Special Agent Boyd mentioned a digital camera that had not been recovered in the initial search of the hotel room. Civ. Dkt. 8-2 at 10, ¶ 23. Mr. Walker told Special Agent Boyd where the digital camera was located and consented to police re-entering the hotel room, where they found the camera. Civ. Dkt. 8-2 at 10, ¶ 23. Pornographic images and videos were located on the digital camera; however, the files were duplicates of those that had already been found on Mr. Walker's external hard drive and had no impact on his sentence. *Id.* at ¶ 24.

On September 10, 2015, a grand jury returned a five-count indictment charging Mr. Walker with three counts of Sexual Exploitation of Children under 18 U.S.C. § 2251(a), one count of Transportation of Child Pornography under 18 U.S.C. § 2252(a)(1), and one count of Possession of Child Pornography under 18 U.S.C. § 2252(a)(5)(B). Crim. Dkt. 1. Mr. Parnes represented Mr. Walker throughout the criminal proceeding. Civ. Dkt. 8-1 at 2-3, ¶ 16.

During his representation, Mr. Parnes grew concerned about Mr. Walker's mental state. *Id.* at 3, ¶ 18. Mr. Parnes filed a Motion for Competency Hearing based on his concern. Crim. Dkt. 11. The Court ordered a psychological evaluation and report. Crim.

Dkt. 14. After reviewing the report and the case history, the Court found that Mr. Walker was competent and allowed proceedings to continue. Crim. Dkt. 29.

In July, 2016, the Government and Mr. Walker reached a Plea Agreement. Crim. Dkt. 27. Mr. Walker agreed to plead guilty to the counts for Transportation and Possession of Child Pornography, while the Sexual Exploitation of Children counts were dropped. *Id.* at 2. The parties agreed that the following United States Sentencing Guidelines (U.S.S.G.) sections applied to the case:

  a. 22 (base offense level under USSG § 2G2.2(a)(2));
  b. +2 (material involving prepubescent minor under USSG § 2G2.2(b)(2));
  c. +5 (distribution for the expectation of receipt of a thing of value under USSG § 2G2.2(b)(3)(B));
  d. +4 (images depicting sadistic or masochistic conduct under USSG § 2G2.2(b)(4));
  e. +5 (pattern of activity involving the sexual abuse or exploitation of a minor under USSG § 2G2.2(b)(5));
  f. +5 (600 or more images under USSG § 2G2.2(7)(D)).
  g. Total offense level = 43.

*Id.* at 10-11. The parties further agreed that if Mr. Walker clearly accepted responsibility for the offense he would be entitled to a reduction in offense level under U.S.S.G. § 3E1.1(a)-(b). *Id.* at 12.

While signing the plea agreement, Mr. Walker crossed out language that stated, "I am satisfied with my attorney's advice and representation in this case." Crim. Dkt. 27 at 22. At the plea hearing, the Court questioned Mr. Walker about his satisfaction with Mr. Parnes' representation. Crim. Dkt. 48 at 5:13-15:5. The Court concluded that the plea agreement's allowance for filing of an ineffective assistance of counsel claim under 28 U.S.C. § 2255 sufficiently preserved Mr. Walker's right to pursue any issue arising out of Mr. Parnes' advice. *Id.* at 16:11-17:12.

## LEGAL STANDARD

28 U.S.C. § 2255 provides four grounds on which a court may grant relief to a federal prisoner who challenges the imposition or length of his or her custody: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a court may summarily dismiss a § 2255 motion "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." A court need not hold an evidentiary hearing in a § 2255 case "when the issue of the prisoner's credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). The court may dismiss the § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254, incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing 2255. If the court does not dismiss the proceeding, the court then determines, pursuant to Rule 8, whether an evidentiary hearing is required. A hearing is not required if, in light of the record, the movant's allegations are "palpably incredible or patently frivolous."

*Joseph v. United States*, 583 F. App'x 830, 831 (9th Cir. 2014) (citing *United States v. Mejia–Mesa*, 153 F.3d 925, 931 (9th Cir.1998)).

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a movant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the court has dismissed a § 2255 motion on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the court has denied a § 2255 motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong. *Id.*; *see also Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

## ANALYSIS

Mr. Walker files this Motion to Vacate, Set Aside, or Correct Sentence on three bases: first, that he received ineffective assistance from his attorney, Mr. Parnes; second, that he was refused counsel of his choice; and third, that the Court committed judicial error by accepting his guilty plea. Civ. Dkt. 1.

1.  **Ineffective Assistance of Counsel**

Mr. Walker first asserts that his attorney, Mr. Parnes, provided ineffective assistance throughout the course of the investigation and court proceedings. To establish

ineffective assistance of counsel, a plaintiff must show (1) that his "counsel's representation fell below an objective standard of reasonableness," and (2) that there is a "reasonable probability" that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Conclusory allegations are insufficient to state a claim of ineffective counsel. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

When evaluating a defendant's representation, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688. The reason being that, for the defendant, "[i]t is all too tempting ... to second-guess counsel's assistance after conviction or adverse sentence...." *Id*. For the Court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002). In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The *Strickland* standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986).

Both ineffective assistance of counsel and prejudice must be found before a district court will find that a conviction or sentence "'resulted from a breakdown in the adversar[ial] process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). If either element of the two-part *Strickland* test is absent, then a defendant has not met his or her burden. When making this assessment, "there is no reason for a court deciding an ineffective assistance claim to

approach the inquiry in the same order or even to address both components of the inquiry ..." S*trickland*, 466 U.S. at 697.

Mr. Walker alleges that Mr. Parnes provided ineffective assistance of counsel for three reasons. First, because Mr. Parnes advised Mr. Walker to cooperate with investigators. Second, because Mr. Parnes failed to file a motion to suppress evidence arising out of the search warrant. And third, because Mr. Parnes requested a psychological evaluation of Mr. Walker.

### A. *Advice to Cooperate with Investigators*

Mr. Parnes advised Mr. Walker that full cooperation with investigators could lead to significant benefits under the sentencing guidelines. In turn, Mr. Walker agreed to cooperate under the terms of the government's proffer agreement. Under the proffer agreement, information Mr. Walker shared could not be used in the government's case-in-chief or to determine his appropriate guideline sentence. But the agreement also stated that the contents of the proffer must be provided to a sentencing judge, and as promised, Mr. Walker's statements in the proffer interviews were eventually included in his PSR. Mr. Walker now claims that the evidence obtained through the proffer interview was improperly "used against [him] in court." Civ. Dkt. 1 at 4.

Cooperating with the government is a crucial aspect of plea bargaining and sentencing under the Federal Sentencing Guidelines. *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003). A defendant who cooperates does so with the hope of obtaining a reduced sentence for substantial assistance to the government under U.S.S.G. § 5K1.1. *Id.* at 1118. A defendant seeking a reduced sentence is entitled to competent

counsel during attempts to cooperate. *Id.* A downward departure for substantial assistance is never guaranteed, but such a departure is impossible to obtain without successful cooperation. *Id.* at 1119.

Mr. Parnes' advice to cooperate with investigators was not ineffective assistance. Mr. Parnes had reviewed the government's evidence and correctly concluded that it was overwhelming. He advised Mr. Walker that full cooperation could result in benefits under the sentencing guidelines. In addition, Mr. Parnes secured a proffer agreement ensuring that any information shared by Mr. Walker could not be used in a case-in-chief against him. Under U.S.S.G. § 1B1.8(a), when a defendant provides self-incriminating information during a proffer, that information "shall not be used in determining the applicable guideline range."

In this case, Mr. Walker's proffer interview statements did not cause him to suffer any prejudice. The proffer agreement allowed Mr. Walker to cooperate with the government while protecting his right against self-incrimination had the case proceeded to trial. Although Mr. Walker's proffer statements were included in his PSR, the criminal offense level agreed-to by the parties relied on information gathered independent of the proffer. Mr. Parnes reasonably believed that full cooperation with the government represented Mr. Walker's best chance to receive a reduction in his sentence. That advice was clearly within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688.

   **B.**   ***Failure to File Motion to Suppress***

Mr. Walker next argues that the search warrant for his hotel room lacked probable cause and that Mr. Parnes erred by failing to file a motion to suppress the evidence. Civ. Dkt. 1 at 5. The search warrant was based on an affidavit submitted by Special Agent Boyd and was approved by a Magistrate Judge. Special Agent Boyd's affidavit claimed that evidence existed showing Mr. Walker had traded in child pornography online, that the devices Mr. Walker used to access the internet were likely in his hotel room, and that Mr. Walker was offering to introduce his child to other individuals that he had connected with online. Special Agent Boyd had also obtained further evidence of Mr. Walker's activities through a data request to Yahoo! Inc.'s Custodian of Records.

Probable cause for a search warrant exists when there is a "fair probability" that the evidence will be found. *Illinois v. Gates*, 462 U.S. 213, 246 (1983). A magistrate judge's determination that probable cause exists "should be paid great deference." *Id.* at 236. Mere conclusory statements by law enforcement, on their own, are insufficient to create probable cause for possession of child pornography. *See, e.g., Dougherty v. City of Covina*, 654 F.3d 892, 899 (9th Cir. 2011). But even if a warrant is unsupported by probable cause, suppression of the evidence found in a search pursuant to that warrant is not justified if "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable[.]" *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). Suppression of evidence would therefore be appropriate if an officer's belief in the existence of probable cause was entirely unreasonable based on an objective reading of the affidavit supporting

the search warrant. *Needham*, 718 F.3d at 1194 (quoting *United States v. Grant*, 682 F.3d 827, 836 (9th Cir. 2012)).

Mr. Parnes reasonably concluded that a motion to suppress evidence arising out of the search warrant would likely be fruitless. Mr. Parnes' "strategic choice" not to pursue a motion to suppress is "owed deference commensurate with the reasonableness of the professional judgments on which [his decision was] based." *See Strickland*, 466 U.S. at 681. The affidavit supporting the search warrant provided specific evidence that Mr. Walker was engaged in trading of child pornography. Special Agent Boyd's affidavit alone establishes the reasonableness of the search warrant. And, even if this Court had found the search warrant lacked probable cause, the officer's reliance on the Magistrate Judge's finding of probable cause would be sufficient reason to deny a motion to suppress under the *Leon* standard.

### C. *Psychological Evaluation*

Mr. Walker next alleges that his mental health evaluation was used against him by the Court. Civ. Dkt. 1 at 4. Early in the proceeding, Mr. Parnes sought a psychological evaluation for Mr. Walker to determine his competence to proceed to trial. Crim. Dkt. 12. After reviewing the evaluation, the Court found Mr. Walker competent. Crim. Dkt. 26. An attorney who is concerned about his client's competence to proceed to trial has little choice but to raise the issue with the Court. Doing so does not amount to "deficient performance" under *Strickland*.

Information from the psychological evaluation was included in the Offender Characteristics section of the PSR, but this information did not negatively affect Mr.

Walker's sentence in any way. Mr. Walker cannot show any prejudice from Mr. Parnes' decision to seek a psychological evaluation. Since there was neither deficient performance nor prejudice resulting from Mr. Parnes' decision to raise the issue of his client's competence, the Court finds that it does not constitute ineffective assistance of counsel.

For the reasons stated above, the Court finds that Mr. Parnes' representation was reasonable, that Mr. Walker has failed to meet either prong of the *Strickland* test with respect to his three arguments for ineffective assistance of counsel, and will deny his motion to vacate or modify his sentence on these grounds.

### 2. Counsel of Choice

Mr. Walker also argues his sentence should be vacated because he was refused his counsel of choice. Civ. Dkt. 1 at 7. After Mr. Walker arrived at the Twin Falls police station, he requested an attorney. Special Agent Boyd asked if he should contact a public defender, to which Mr. Walker replied, "[y]es, I think the sooner the better." Mr. Walker also mentioned that he had a business card for another attorney in his wallet, but that the wallet was still in his hotel room. Special Agent Boyd told Mr. Walker he could call the agents at the hotel room to get the phone number from Mr. Walker's wallet. Civ. Dkt. 8-2 at 4, ¶ 8. Mr. Walker then said that he did not have the funds to pay for an attorney. *Id.* A Twin Falls Police detective asked, "If we can't get a hold of him, would someone from the public defender's office, would that suffice?" *Id.* Mr. Walker responded, "Well an attorney is an attorney and they have to represent me, so yeah. Uh, just as far as preference that's the only kid that I've dealt with." *Id.* Special Agent Boyd told Mr.

Walker he was going to connect him with a public defender. *Id.* at ¶ 9. Special Agent Boyd eventually got in touch with Mr. Parnes through the Federal Public Defender's Office. Mr. Walker asked, "How does he get paid?" and Special Agent Boyd explained that the government would pay Mr. Parnes if Mr. Walker was unable to pay the attorney himself. *Id.* at 6, ¶ 12.

A defendant is afforded a fair opportunity to secure counsel of his own choice. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). An indigent defendant does not have the right to a particular attorney so long as they are afforded adequate representation. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). In other words, "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Id.* at 624-25.

Although Mr. Walker initially requested a particular attorney, he did not object to Special Agent Boyd reaching out to the Federal Public Defender's Office. Further, Special Agent Boyd had indicated that he could retrieve the phone number for Mr. Walker's preferred attorney if that was what Mr. Walker wanted. Mr. Walker indicated that he did not have the funds to pay an attorney and asked how a public defender would be paid. And, once Mr. Walker began working with Mr. Parnes, he did not request substitute counsel at any time during the proceedings. At his plea hearing, Mr. Walker indicated that "I have had opportunities to address [Mr. Parnes' counsel] earlier, and I chose to keep Mr. Parnes because I felt he has been doing a fine job . . . to represent me." Civ. Dkt. 8-4 at 18:11-14.

Under the terms of his plea agreement, Mr. Walker also waived his right to file a claim for being refused counsel of his choice. A defendant's waiver of his right to appeal is enforceable if (1) the language of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal, and (2) the waiver is knowingly and voluntarily made. *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) (citations and quotations omitted). Mr. Walker's plea agreement specifies that he waived any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, although he retained the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel. Crim. Dkt. 27 at 16-17. At his plea hearing, Mr. Walker indicated that his plea of guilty was knowing and voluntary. *Id.* at 35:5-38:4. Therefore, the Court likewise finds that Mr. Walker waived his right to appeal, or otherwise challenge, his not being provided the counsel of his choice.

### 3. Judicial Error in Acceptance of Guilty Plea

Third, Mr. Walker argues that at his plea hearing he "did feel forced into accepting [the] plea agreement" and that the Court committed judicial error by accepting his guilty plea. Civ. Dkt. 1 at 9. The test for determining whether a plea is valid is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A guilty plea is coerced where a defendant is "induced by promises or threats which deprive [the plea] of the nature of a voluntary act." *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (citations omitted). To determine the voluntariness of the plea, the Court must look to the totality of the circumstances, examining both the defendant's

"subjective state of mind" and the "constitutional acceptability of the external forces inducing the guilty plea." *Id.*

At his plea hearing, Mr. Walker said that "when you ask me the question whether I feel coerced, because of the way the events has gone from the decision on day one, yes. Because of all the knowledge that's out there now, yes, I want to take the plea because I don't feel I have any choice because there is no way to retract anything that has happened since day one." Civ. Dkt. 8-4 at 10:7-12. Taken in context, Mr. Walker's statement that he "fe[lt] coerced" does not render his guilty plea involuntarily. Mr. Walker's statements instead indicate that, given the evidence against him, he personally felt that he didn't "have any choice" other than to plead guilty. *Id.* Furthermore, the Court described the significance of a guilty plea with Mr. Walker at his sentencing, made sure Mr. Walker was making his plea voluntarily, and through its allocution with the Defendant found that he had not been forced to plead guilty. *Id.* at 34:3-6. The totality of the circumstances show that Mr. Walker was not in any way forced to plead guilty, and that the Court cured any possibility that the Defendant subjectively felt coerced during its allocution with the Defendant at sentencing. Therefore, the Court finds that the Defendant was not coerced into pleading guilty, and will deny his motion on these grounds as well.

4. **Certificate of Appealability**

The standard to obtain review is lower than that required for the Petitioner to succeed on the merits of his petition. *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000). To satisfy this lower standard when the court has denied a § 2255 motion, a petitioner must show reasonable minds could debate over the resolution of the issues or

that questions raised in the petition deserve further review. *Allen*, 435 F.3d at 951. Having reviewed the record in this case, the Court finds that reasonable jurists would not find its determinations regarding Mr. Walker's claims to be debatable or deserving of further review. Mr. Walker failed to demonstrate ineffective assistance of counsel under the *Strickland* test, and cannot show he was either coerced into pleading guilty or that he was denied his counsel of choice so as to justify relief under § 2255. *See* Dkts. 1 & 9. Accordingly, the Court will not issue a certificate of appealability as to any issue raised in Mr. Walker's § 2255 motion.

# ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1. Petitioner Stephen Roy Walker's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Civ. Dkt. 1) is DENIED.

2. A Certificate of Appealability shall not issue in this case. Mr. Walker is advised that he may still request a certificate of appealability from the Ninth Circuit Court of Appeals pursuant to the Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1.

3. IT IS FURTHER ORDERED that the Clerk of Court shall forward a copy of this Order to the Ninth Circuit. The district court's file in this case is available for review online at www.id.uscourts.gov.



DATED: July 18, 2019

_____
B. Lynn Winmill
U.S. District Court Judge